IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

WILLIAM SCOTT HOWARD,

    Plaintiff,

v.                                                                                     No. 1:23-cv-01262-STA-jay

JOSEPH FOX,

    Defendant.

---

REPORT AND RECOMMENDATION

---

Pending before the Court is Defendant Joseph Fox's motion to dismiss. (Docket Entry ["D.E."] 19). Plaintiff William Scott Howard has not filed a response in opposition but has filed numerous motions after Fox filed his motion to dismiss.[1] This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05. It is RECOMMENDED that Fox's motion to dismiss be GRANTED, and that Howard's motions be DENIED.

---

[1] Those motions are: motion for jury trial (D.E. 35); motion/statement regarding the Jackson Police Department not having bodycam footage Howard requested (D.E. 36); motion to appoint counsel (D.E. 37); motion for leave to contact a potential witness (D.E. 38); motion to grant Howard's request for bodycam footage from the Madison County Sheriff's Department (D.E. 39); motion for leave to submit evidence (D.E. 40); motion to grant Howard's request that he receive recorded calls to the Jackson Police Department (D.E. 47); motion to grant Howard's request for all statements, documents, and bodycam footage concerning his claim (D.E. 50); motion to appoint attorney, set case management conference, grant him a settlement, and a ruling on his pending motions (D.E. 54); motion to grant settlement (D.E. 55); motion to grant all pending motions (D.E. 56); motion to reconsider and readmit his dismissed allegations of false arrest and false imprisonment claims (D.E. 58); motion for case management conference (D.E. 64); and motion bring criminal charges against Fox and for the Court to order a settlement (D.E 65). Fox was granted leave not to respond to Howard's motions. (D.E. 61.)

I.

Howard filed this lawsuit arising from an incident in which he was tased by Tennessee Highway Patrol Trooper Fox. According to Howard's Complaint, he was walking along Interstate 40 in Madison County, Tennessee on August 22, 2023. (D.E. 1-1 at 3). He states that as "[he] was walking down the interstate [he] heard a voice yelling, [but] no one was trying to get [his] attention so [he] just kept walking off the interstate." (*Id*. at 6). Howard alleges he was then tased and "then [he] saw who was yelling at [him] was a [] state trooper." (*Id*.)

According to video footage taken from the dashboard camera of Trooper Fox's cruiser and from his body worn camera (D.E. 20, Ex. 1 and 2), Trooper Fox pulled up behind Howard in his vehicle as Howard was walking along the emergency lane of Interstate 40. Howard looked at the cruiser and continued walking along the interstate. (*Id*. at Ex. 1 at 00:35-00:46). Trooper Fox placed his vehicle in park and shouted, "Hey sir!" (*Id*. at 00:56-1:02). Howard made no apparent reaction and continued walking along the interstate. (*Id*.) Trooper Fox put his vehicle back in drive and began slowly following Howard, stating "I'm going to need you to stop walking for a second" over the vehicle's speaker, again to no effect. (*Id*. at 1:06- 1:37). Trooper Fox then parked and exited his vehicle and began pursuing Howard on foot, while repeating his commands to stop. (Ex. 2, Fox Bodycam Video at 1:35-1:40). Trooper Fox shouted, "I'm giving you a lawful command to stop or you're going to get tased." (*Id*. at 1:42-1:46). Howard asked "For what?" as he continued walking. (*Id*. at 1:47-1:49). Trooper Fox replied that "It's illegal to walk on the interstate—I'm trying to talk to you, so you can either talk to me or you can get tased." (*Id*. at 1:49-1:55). Howard again asked "For what?" (*Id*. at 1:54-2:01). Howard continued walking and did not turn to face Trooper Fox. (*Id*.) Trooper Fox then stated: "Stop right now! Last chance." (*Id*. at 2:01- 2:06). Howard continued walking. (*Id*. at 2:00- 2:08). Trooper Fox deployed his taser probes, which made

2

contact with Howard's back. (*Id*. at 2:08-2:15). Howard immediately stiffened, fell, and was handcuffed. (*Id.;* D.E. 1-1 at 6).

Troper Fox advised Howard that he was under arrest for resisting arrest and asked him if he needed medical attention. (D.E. 1-1 at 6-7). Howard advised that Trooper Fox that his ribs hurt, and he needed medical attention. (*Id*.) Howard was shortly seen by an EMT who "checked [him] out and nothing was broken." (*Id*. at 7). Howard was transported to the Madison County Jail, was examined by a nurse at the jail who gave him "a pain pill", and he was soon released on his own recognizance. (*Id*.) The criminal charge against him was ultimately dismissed. (D.E. 52-1).

Howard brought this lawsuit pro se and, because he received *in forma pauperis* status, the Court screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). The undersigned magistrate judge issued a report and recommendation that Howard be allowed to proceed with an excessive force claim against Trooper Fox but that his claim for false imprisonment be dismissed. (D.E. 9). Howard objected to the report and recommendation (D.E. 10), and the district court overruled Howard's objection and adopted the recommendation that the excessive force claim could proceed against Trooper Fox. (D.E. 11). Process was served upon Trooper Fox, and he filed the present motion to dismiss as his responsive pleading. (D.E. 13-14, 19).

II.

Trooper Fox moves to dismiss Howard's lawsuit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that he is entitled to qualified immunity.

A.  Dismissal Standard

To survive a motion to dismiss, a plaintiff must allege enough facts to "state a plausible claim to relief." *Bryant v. McDonough*, 72 F.4th 149 (6th Cir. 2023); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Courts must "construe the complaint in a light most favorable to the plaintiff,

3

accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024) (quoting *Ashcroft*, 556 U.S. at 678).

What is more, courts "liberally construe[ ]" pro se pleadings and hold them "to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But this "lenient treatment ... has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citation omitted); *see also Orlowski v. Bates*, 146 F. Supp. 3d 908, 921 (W.D. Tenn. 2015) ("Pro se litigants, however, are not exempt from the basic pleading requirements of the Federal Rules of Civil Procedure." (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Pro se plaintiffs must still plead enough "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). And district courts are not "required to create" a pro se plaintiff's claim for him. *Payne v. Sec'y of the Treasury*, 73 F. App'x. 836, 837 (6th Cir. 2003).

Dismissal on the basis of qualified immunity at the pleading stage is disfavored. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020). "But this is only a 'general preference,' not an absolute one." *Id.* (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)). More recently the Sixth Circuit has held that "a district court cannot defer a decision on qualified immunity merely because it must make the decision on a Rule 12 motion." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1003 (6th Cir. 2024). Along these same lines the Sixth Circuit reasoned that "[b]ecause qualified immunity is a defense not just to liability but to having to litigate the suit itself, a district court must resolve the question as soon as possible." *Id*. When balancing the interests served by qualified

immunity, some claims, particularly insubstantial ones, should be resolved before discovery. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether qualified immunity applies in this case, the Court must consider (1) whether Howard has plausibly alleged a violation of his constitutional rights, and (2) whether that constitutional right was clearly established. *Id.* at 227. If a plaintiff fails to satisfy either of these steps, "then qualified immunity shields the government officer from civil damages." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (citing *Pearson*, 555 U.S. at 236).

In qualified-immunity cases, courts are not limited solely to the allegations set forth in a complaint when deciding a motion to dismiss and, instead, may consider videos. *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022). The Sixth Circuit reasoned:

> Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate. So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos. …Thus, it makes little sense to waste time and effort by ignoring the videos' contents.
>
> That said, our use of the videos is limited at this stage. If there is a factual dispute between the parties, we can only rely on the videos over the complaint to the degree the videos are clear and "blatantly contradict[ ]" or "utterly discredit[ ]" the plaintiff's version of events. Otherwise, we must accept the plaintiff's version as true. This all makes sense—if the indisputable video evidence contradicts [plaintiff's] pleadings, his allegations are implausible.

*Id.* (citations omitted).

B. Excessive Force

To determine whether force was excessive, courts "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (internal quotation marks omitted) (quoting *Burgess v. Fischer*,

735 F.3d 462, 472 (6th Cir. 2013)). Three factors guide the reasonableness test: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Burgess*, 735 F. 3d at 472. And, "[t]hough important, these factors are not the end of the matter, as the court ultimately must determine whether the totality of the circumstances justifies a particular sort of seizure." *Williams*, 9 F.4th at 438 (quotation marks omitted).

"[A]n officer can tase a suspect who 'actively resists arrest ... to subdue him.' " *Jackson-Gibson v. Beasley*, 118 F.4th 848, 856 (6th Cir. 2024) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015)). "Active resistance includes 'physically struggling with, threatening, or disobeying officers.' " *Rudlaff*, 791 F.3d at 641 (quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)); *see also Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) (stating that in "taser cases" "active resistance could be characterized as 'noncompliance,'" "coupled with 'some outward manifestation—either verbal or physical—on the part of the suspect [that] suggest[s] volitional and conscious defiance' ").

Trooper Fox has submitted the video footage from his patrol car dashboard camera and his body worn camera that depict his encounter with Howard. (*See* D.E. 25). Based on the video evidence, none of which is controverted by Howard's allegations in his Complaint, and guided by the *Graham* factors, the undersigned finds that Trooper Fox acted reasonably and did not use excessive force in deploying his taser upon Howard.

6

While the crime Howard appears to commit when Trooper Fox encountered him, walking on a roadway in violation of Tenn. Code Ann. § 55-8-138, is a Class C misdemeanor offense and not considered a severe crime, Howard's act of walking along the interstate posed an immediate danger to himself and motorists on the interstate. The video clearly establishes that Howard was resisting Trooper Fox by actively disobeying the officer's verbal commands to stop walking along the interstate. Trooper Fox gave numerous warnings to Howard to stop walking and Howard refused. Howard's action of walking along the interstate created a danger for himself and, had Trooper Fox tried to stop Howard by making physical contact with him, Trooper Fox undoubtedly would have subjected himself to a heightened danger. Based upon the totality of the circumstances, the level of force Trooper Fox used against Howard was justified and appropriate.

Moreover, there is no clearly established right that tasing an actively resistant misdemeanant suspect was a constitutional violation. Rather, the opposite is true. The Sixth Circuit has clearly held that law enforcement officials may deploy a taser upon a suspect that is actively resisting arrest. *See Rudlaff*, 791 F.3d at 641. Howard's actions of not stopping and continuing to walk after Trooper Fox gave him numerous commands to stop was active resistance and he had no right not to be tased under those circumstances.

Trooper Fox's use of his taser against Howard was objectively reasonable and did not violate Howard's constitutional rights. Because Howard cannot establish a violation of his constitutional rights, and that there was no clearly established right not to have the level of force used against him under the totality of these circumstances, Trooper Fox is entitled to qualified immunity. Thus, it is recommended that Trooper Fox's motion to dismiss be GRANTED.

III.

Howard has brought many motions that are pending before the Court. These motions generally fall into three categories: the appointment of counsel; discovery matters; and case management. All of Howard's motions should be denied.

A. Appointment of Counsel

Federal law provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). But the "[a]ppointment of counsel in a civil case is not a constitutional right." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (quoting *Mekdeci v. Merrell National Laboratories*, 711 F.2d 1510, 1522 n.19 (11th Cir. 1983)). Only in "exceptional circumstances" should a court appoint counsel for a pro se litigant in a civil case. *Id*. at 606; *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019). In deciding whether exceptional circumstances exist, courts should consider the complexity of the case, the ability of the litigant to represent themselves, and whether the litigant's claims are frivolous. *Lavado*, 922 F.2d at 606.

Here, the Court has considered these factors and finds that the appointment of counsel is not warranted. The single claim of excessive force was not complex, and Howard demonstrated his ability to adequately represent himself through the numerous motions he filed. Howard's Complaint survived the Court's screening in part. Even the most able of counsel could not offer arguments to the Court that would overcome the uncontroverted video evidence that demonstrates the reasonableness of the force Trooper Fox used against Howard. Thus, Howard's motions for the appointment of counsel (D.E. 37, 54) should be DENIED.

B. Discovery matters

Howard filed several motions seeking various orders from the Court that third parties produce discovery materials to him or that he be permitted to submit evidence to the Court. (*See* D.E. 36, 38, 39, 40, 47, and 50). The Supreme Court requires that civil-rights actions brought under § 1983 play out in stages to shield government officials from the "burdens of litigation." *Kennedy v. City of Cleveland*, 797 F.2d 297, 299–300 (6th Cir. 1986) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). If the defendant files a motion to dismiss based on qualified immunity, the court must "stay discovery until that issue is decided." *Id.* at 299. If the defendant is denied qualified immunity on the motion to dismiss, then "the plaintiff ordinarily will be entitled to some discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Further, discovery is not warranted when there are dispositive legal issues pending that will not be altered by any further discovery. *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003).

Here, because Trooper Fox moved to dismiss on the basis of qualified immunity, Howard had no right to engage in discovery until the question of qualified immunity was resolved. As it is recommended that Trooper Fox be granted qualified immunity, it is further recommended that Howard's discovery related motions be DENIED AS MOOT.

C. Case management

Finally, Howard has filed several motions seeking case managements conferences, rulings on his motions, readmitting the dismissed false imprisonment claim, the institution of criminal proceedings against Trooper Fox, and requests that the Court order Trooper Fox to settle Howard's claim. (D.E. 54, 55, 56, 58, 64, and 65). In the event the district court adopts this report and recommendation, all of Howard's remaining motions should be DENIED AS MOOT.

IV.

For these reasons, the Court should find that Trooper Joseph Fox is entitled to qualified immunity and GRANT his motion to dismiss. Further, the Court should DENY all of Plaintiff William Scott Howard's pending motions.

Respectfully submitted this the 29th day of August, 2025.

<u>s/Jon A. York</u>
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDATION DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(B)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**